## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## AUGUSTA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CR 119-024** |
| | ) | |
| **JOHN WILLIE POWELL** | ) | |
| | ) | |

### GOVERNMENT'S MOTION TO DISMISS AND, ALTERNATIVELY RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A) AS AMENDED BY THE FIRST STEP ACT OF 2018

Defendant John Willie Powell moves for compassionate release based upon the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 (2018). (Doc. 87.) His motion is primarily based on the COVID-19 pandemic. He raises claims regarding his medical conditions as well as the conditions of his confinement. However, he failed to first exhaust his administrative remedies with the Bureau of Prisons (BOP) regarding these alleged conditions. Alternatively his claim regarding the conditions of his confinement fails to state a claim upon which relief can be granted. And although he does have a medical condition which, in light of the pandemic, "might" qualify as an "extraordinary and compelling reason" under U.S.S.G. § 1B1.13, this Court should, after considering the factors under 18 U.S.C. § 3553(a) and in its discretion, deny Powell's request for compassionate release.

### Factual Background

In June 2019, Powell, under a written plea agreement, pled guilty to the offense of distribution of five grams of more of methamphetamine, in violation of 21

U.S.C. § 841(a)(1). (PSR ¶¶ 2, 4.) By entering into the plea agreement, Powell avoided exposure to further sentencing liability.[1] (PSR ¶ 59.) The presentence investigation report (PSR) reflected Powell had a total offense level of 29, a criminal history category of II, and an advisory guideline range of 97 to 121 months' imprisonment. (PSR ¶ 58.) In November 2019, this Court sentenced Powell to 97 months' imprisonment. (Doc. 77.) Powell did not directly appeal.

Powell now moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). He is incarcerated at FCI Tallahassee, located in Tallahassee, Florida with a projected release date of February 6, 2026.[2]

## Legal Analysis

### A. Statutory Background

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides in part:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to

---

[1] Had Powel been convicted of all the offenses for which he was charged in the indictment, including conspiracy to distribute 50 grams or more of methamphetamine, his sentence would have resulted in a mandatory term of ten years' imprisonment. (PSR ¶ 59.)

[2] BOP Inmate Locator, *available at* https://www.bop.gov/inmateloc/ (last visited Oct. 29, 2020). Projected release date indicates release from BOP custody and may not reflect date by which BOP will consider defendant for placement in a halfway house, a residential reentry center or home confinement.

bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i)   extraordinary and compelling reasons warrant such a reduction . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . .

The 30-day administrative exhaustion requirement is a mandatory claim-processing rule, meaning that, while not jurisdictional, a district court must dismiss when the issue is raised by the Government. *See United States v. Alam*, 960 F.3d 831, 833-34 (6th Cir. 2020) (holding § 3582(c)(1)(A)'s 30-day administrative exhaustion requirement is claim-processing rule which "must be enforced" when "properly invoked"); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("We conclude that the requirement is *not* jurisdictional, but that it *is* mandatory.").

Further, 28 U.S.C. § 994(t) provides:  "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.  Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  Accordingly, the relevant policy statement of the Commission is binding on the Court.  *See Dillon v. United States*, 560 U.S. 817, 827 (2010) (where 18 U.S.C. § 3582(c)(2) permits a sentencing reduction based on a retroactive Guidelines amendment, "if such a reduction is consistent with applicable

3

policy statements issued by the Sentencing Commission," the Commission's pertinent policy statements are binding on the court).[3]

The Sentencing Guidelines policy statement appears at § 1B1.13, and provides that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Critically, in application note 1 to the policy statement, the Commission identifies the "extraordinary and compelling reasons" that may justify compassionate release. *See United States v. Wilkes*, 464 F.3d 1240, 1245 (11th Cir. 2006) ("Commentary and Application Notes of the Sentencing Guidelines are binding on the courts unless they contradict the plain meaning of the text of the Guidelines.") (internal quotation marks omitted). The note provides as follows:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger

---

[3] Prior to the passage of the First Step Act, while the Commission policy statement was binding on the Court's consideration of a motion under § 3582(c)(1)(A), such a motion could only be presented by BOP. The First Step Act added authority for an inmate herself to file a motion seeking relief, after exhausting administrative remedies, or after the passage of 30 days after presenting a request to the warden, whichever is earlier.

Under the law, the inmate does not have a right to a hearing. Rule 43(b)(4) of the Federal Rules of Criminal Procedure states that a defendant need not be present where "[t]he proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)." *See Dillon,* 560 U.S. at 827-28 (observing that, under Rule 43(b)(4), a defendant need not be present at a proceeding under Section 3582(c)(2) regarding the imposition of a sentencing modification).

to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A)    Medical Condition of the Defendant.—

    (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii)    The defendant is—

        (I)    suffering from a serious physical or medical condition,

        (II)    suffering from a serious functional or cognitive impairment, or

        (III)    experiencing deteriorating physical or mental health because of the aging process,

        that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)    Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)    Family Circumstances.—

    (i)    The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D)    Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and

compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

For its part, consistent with note 1(D), the Bureau of Prisons (BOP) promulgated Program Statement 5050.50 ("PS 5050.50"), available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf, amended effective January 17, 2019, to set forth its evaluation criteria.

In general, a defendant has the burden to show circumstances meeting the test for compassionate release. *See United States v. Saldana*, 807 F. App'x 816, 820-21 (10th Cir. 2020) ("[O]ur cases require the movant to show that § 3582(c) authorizes relief for the court to have jurisdiction."); *see also United States v. Heromin*, No. 11-550, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) (citing *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013)). As the text in the statute makes clear, compassionate release is "rare" and "extraordinary." *See United States v. Willis*, No. 15-3764, 2019 WL 2403192, at *3 (D.N.M. June 7, 2019) (citations omitted).

### B. BOP's response to the COVID-19 pandemic.

For the benefit of the Court, an initial statement regarding the COVID-19 situation is warranted. The Government is certainly sensitive to the issues presented by the COVID-19 pandemic, and, along with BOP, is monitoring the situation constantly. The Government does not minimize the concern or the risk. BOP has taken aggressive action to mitigate the danger and is taking careful steps to protect inmates' and BOP staff members' health. As the situation changes, BOP will continue to take action to protect all inmates and staff members, including those who may be more susceptible to adverse results due to age and existing ailments. Inmates

will receive equal and fair consideration based on their facility, health concerns, and other applicable factors as the situation evolves.

BOP began planning for potential coronavirus transmissions in January 2020. At that time, the agency established a working group to develop policies in consultation with subject matter experts in the Centers for Disease Control (CDC), including by reviewing guidance from the World Health Organization (WHO).

In mid-March 2020, BOP announced that it implemented the Coronavirus (COVID-19) Phase Two Action Plan ("Action Plan") in order to minimize the risk of COVID-19 transmission into and inside its facilities. The Action Plan comprises several preventive and mitigation measures, including screening staff and all new BOP inmates and quarantining where appropriate; suspending volunteer access; restricting contractor access to BOP facilities except for essential services; assessing stockpiles of food, medicine and sanitation supplies; establishing quarantine areas; placing a 30-day hold on all social visits but increasing detainees' telephone allowance to 500 minutes per month; placing a 30-day hold on legal visits except on a case-by-case basis where the attorney will be first screened for infection; stopping of inmates between facilities for at least 30 days (exceptions for medical treatment and other exigencies); canceling staff travel and training; and requiring wardens at BOP facilities to modify operations to maximize social distancing, such as staggering meal and recreation times.

Later in March 2020, the BOP implemented Phases Three and Four Action Plans, with Phase Four revising preventive measures for all institutions by updating

its quarantine and isolation procedures to require that all newly admitted inmates to BOP, whether in a sustained community transition area or not, be assessed using a screening tool and temperature check. These procedures apply to all new intakes, detainees, commitments, writ returns from judicial proceedings, and parole violators, regardless of their method of arrival. Also, asymptomatic inmates are placed in quarantine for a minimum of 14 days or until cleared by medical staff. Symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation.

In April 2020, Phase Five and Six Action Plans were implemented in response to a growing number of quarantine and isolation cases, to further mitigate the risk of exposure and spread of COVID-19. Phase Five provided that (1) for a 14-day period, inmates in every institution be secured in their assigned cells/quarters to decrease the spread of the virus based on health concerns; and (2) BOP coordinate with the United States Marshals Service (USMS) to significantly decrease incoming movement.[4] Phase Six extended all measures from Phase Five until May 18, 2020.

On April 23, 2020, BOP received additional equipment to expand COVID-19 testing, which BOP prioritized at select facilities experiencing widespread transmission. On May 7, 2020, BOP announced the substantial expansion of testing, starting with detention and quarantine sites using new equipment provided by the Department of Health and Human Services.

---

[4] Further details regarding these efforts are available at: https://www.bop.gov/resources/news/20200313_covid-19.jsp and at a regularly updated resource page: https://www.bop.gov/coronavirus/index.jsp.

In tandem, on March 26, 2020, the Attorney General directed the BOP Director, upon considering the totality of the circumstances concerning each inmate, to prioritize the use of statutory authority to place prisoners in home confinement. That authority allows BOP to place an inmate in home confinement during the last six months or ten percent of a sentence, whichever is shorter, *see* 18 U.S.C. § 3624(c)(2), and to move to home confinement those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g). Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, enacted on March 27, 2020, permits BOP, if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence" of 18 U.S.C. § 3624(c)(2), as the Director deems appropriate.

On April 3, 2020, the Attorney General directed BOP to "immediately maximize appropriate transfers to home confinement of all appropriate inmates held at FCI Oakdale, FCI Danbury, FCI Elkton, and at other similarly situated BOP facilities where COVID-19 is materially affecting operations." *See* Memorandum from the Attorney General to the Director of the Bureau of Prisons (Apr. 3, 2020), *available at* https://www.justice.gov/file/1266661/download (last visited Oct. 17, 2020). As a result, BOP implemented that directive. *See* Update on COVID-19 and Home Confinement: BOP continuing to aggressively screen potential inmates, *available* *at*

https://www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp (last visited Oct. 17, 2020). As part of this process, BOP is screening and reviewing all inmates automatically to determine which ones meet the criteria established by the Attorney General, meaning prisoners do not have to apply to be considered for home confinement. *See id*. Based on the Attorney General's directive, BOP has placed an additional 7,766 inmates on home confinement so far.[5] *See* https://www.bop.gov/coronavirus/faq.jsp (last visited Oct. 29, 2020).

Taken together, these measures are designed to sharply mitigate the risks of COVID-19 transmission in a BOP institution, and reflect a careful, evidence-based approach that not only provides an overall strategy, but also allows BOP to respond to the specific challenges faced by particular facilities and inmates. BOP professionals will continue to monitor this situation and adjust its practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders. Accordingly, the Government does not advocate action by judges in individual cases that do not involve immediate risk to that particular inmate.

**C. Although Powell has exhausted his administrative remedies as to COVID-19 generally, he has not exhausted his administrative remedies as to his alleged health conditions or conditions of confinement.**

---

[5] As of October 29, 2020, 1,700 inmates and 886 BOP staff members nationwide have tested positive. BOP COVID-19 resource page, *available at* https://www.bop.gov/coronavirus/ (last visited Oct. 29, 2020). Additionally, 15,858 inmates and 1,358 staff members have recovered. *See id*. BOP has reported 129 inmate (four of which occurred while on home confinement) and two staff member COVID-19 related deaths nationwide. *See id*.

In his motion, Powell claims that he "is at greater risk of contracting [ ] COVID-19 because [he] is wheelchair bound." (Doc. 87 at 5.) He also complains about the conditions of his confinement under the Eighth Amendment. In his request for reduction-in-sentence (RIS) made via email on June 17, 2020 to BOP, he only asks BOP whether he is eligible for compassionate release as a result of the COVID-19 pandemic. (Exh. B at 4-5.) Therefore, Powell has exhausted his administrative remedies regarding COVID-19 generally as required under § 3582(c)(1)(A), but not his alleged medical condition or conditions of confinement. In order to fully exhaust his administrative remedies regarding these alleged conditions, Powell should have raised them in his administrative request as he does in his motion. *See United States v. Melvin*, CR 610-029, 2020 U.S. Dist. LEXIS, at *5-*6 (S.D. Ga. July 23, 2020) (explaining that because defendant had not provided copy of BOP request that court was unable to determine whether the claims in his motion were same and had been administratively exhausted) (citing *United States v. Valenta*, No. CR 15-161, 2020 WL 1689786, at *1 (W.D. Pa. Apr. 7, 2020)).

In *United States v. Mollica*, No. 14-329, 2020 WL 1914956 (N.D. Ala. Apr. 20, 2020), another district court within the Eleventh Circuit discussed a similar situation where the defendant raised some, but not all, of her claims with BOP before filing her motion with the district court. There, the defendant filed a motion for compassionate release after fully exhausting her administrative remedies. *See id.* at *2. Subsequently, though, she filed a second motion for compassionate release (effectively a motion to amend her first motion) based upon COVID-19. *See id.* at *5-

*6.  The district court explained that it did not have jurisdiction to consider this amended request.  *See id*. at *6.  "While Ms. Mollica properly pursued administrative relief before she filed her first motion for compassionate release based on her transabdominal mesh and fibroid, she [ ] provided no indication that she exhausted her administrative remedies regarding her complaint about COVID-19.  Therefore, she [could not] properly bring her motion to this Court."  *Id*.

The reasoning in *Melvin* and *Mollica* applies equally here.  Based on this, this Court should dismiss Powell's motion as to his alleged medical conditions and conditions of confinement.  *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("As noted, Raia failed to comply with § 3582(c)(1)(A)'s exhaustion requirement: BOP has not had thirty days to consider Raia's request to move for compassionate release on his behalf, and there has been no adverse decision by BOP for Raia to administratively exhaust within that time period . . . ."); *see also Alam*, 960 F.3d at 832-35 (explaining that 30-day administrative exhaustion period under § 3582(c)(1)(A) was "a mandatory condition"); *United States v. Springer*, 820 F. App'x 788, 791-92 (10th Cir. 2020); *United States v. Pope*, No. CR 216-024, 2020 WL 1956510, at *1 (S.D. Ga. Apr. 23, 2020) (holding in COVID-19 context that because defendant failed to exhaust administrative remedies the court did not have jurisdiction to decide compassionate release motion).  Should the Court find that Powell's claims are exhausted, the Court should alternatively deny Powell's motion for the reasons outlined below.

### D. Powell's Eighth Amendment claim does not qualify as "extraordinary and compelling" under § 1B1.13, application note

*1(A)(i).*

Powell challenges the conditions of his confinement under the Eighth Amendment. He complains that BOP has allegedly refused to provide him with certain prescription medications. (Doc. 87 at 6.) As outlined above, the statute and the Guidelines commentary make clear that compassionate release for extraordinary and compelling reasons is limited to medical, elderly, or family circumstances. A challenge to one's conditions of confinement does not fit the specifically enumerated categories of obtaining relief under § 3582(c). Moreover, Powell's claim regarding the conditions of his confinement as an Eighth Amendment claim against cruel and unusual punishment is "more akin to a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241." *United States v. Zehner*, 2020 WL 3057759, *2 (S.D.N.Y. June 8, 2020.); *see also Antonelli v. Warden*, 542 F.3d 1348, 1352 (11th Cir. 2008) ("[C]hallenges to the execution of a sentence, rather than the validity of the sentence itself, are properly brought under § 2241."); *United States v. Saldana*, 273 F. App'x 845, 846 (11th Cir. 2008) ("This Court has considered an attack by a federal prisoner on his place of confinement to be relief sought pursuant to 28 U.S.C. § 2241."). A § 2241 petition must be filed in the district of the prisoner's confinement. *See* 28 U.S.C. § 2241; *see also Rumsfeld v. Padilla*, 542 U.S. 426, 442-443 (2004). Because Powell is confined in the Northern District of Florida, this Court lacks jurisdiction over any § 2241 petition he might file. *See Padilla*, 542 U.S. at 443.

Thus, Powell's claim is non-cognizable in this action and should be dismissed

for failure to state a claim upon which relief can be granted.[6]

> ### E. Under the circumstances of the COVID-19 pandemic, Powell's medical conditions "might" qualify as "extraordinary and compelling" under § 1B1.13, application note 1(A)(i).

Should this Court conclude that Powell has exhausted his administrative

remedies as to his alleged medical conditions, some medical conditions in light of

---

[6] To the extent Powell argues that, after passage of the First Step Act, district courts now have the authority to determine other reasons that qualify as extraordinary and compelling under the statute and guideline, his claim still fails. It is perhaps unsurprising that some district courts have agreed with this argument. *See United States v. Willingham*, No. CR 113-010, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019) (outlining cases). Also, recently, the Second Circuit took this position. *See United States v. Brooker*, — F.3d —, 2020 WL 5739712 (2d Cir. Sept. 25, 2020). But no court in this district has adopted this approach. To the contrary, those to consider this argument have rejected it. *See United States v. Monaco*, — F. App'x —, 2020 WL 6194688, at *3 (11th Cir. Oct. 22, 2020) (reviewing the statutory text of § 3582(c)(1)(A) and explaining that "a defendant is eligible for compassionate release if the district court finds 'extraordinary and compelling reasons' that are 'consistent with the . . . policy statements' in guideline section 1B1.13"); *see also Willingham*, 2019 WL 6733028, at *2; *United States v. Winner*, — F. Supp. 3d —, 2020 WL 2124594, at *2 (S.D. Ga. 2020); *United States v. Bryant*, No. CR 497-182 (S.D. Ga. Oct. 2, 2019) (denying compassionate release where defendant argued after First Step Act court had authority to determine its own extraordinary and compelling reasons); *see also United States v. Mingo*, No. CR 612-018, 2020 WL 5028770, at *1 (S.D. Ga. Aug. 25, 2020) (explaining that district court cannot "consider circumstances outside of the specific examples of extraordinary and compelling reasons [contained in the guidelines] to afford relief"); *United States v. Burley*, No. CR 118-071, 2020 WL 3874160, at *2 n.2 (S.D. Ga. July 9, 2020) ("The fact remains that Congress intended that the Sentencing Commission, not the judiciary, determine what constitutes an appropriate use of the 'compassionate release' provision."); *see also United States v. Alejo*, No. CR 313-009, 2020 U.S. Dist. LEXIS 35873, at *3 (S.D. Ga. Feb. 27, 2020) (explaining that while defendant attached "Administrative Notes" from his BOP record, "[t]his evidence does not indicate, however, that Alejo's medical condition currently meets the criteria set forth by the Sentencing Commission to qualify him for a reduction in sentence"); *see Saldana*, 2020 WL 1486892, at *3-*4 (holding district court lacked jurisdiction to consider defendant's compassionate release motion because he was "unable to show that he satisfies 'one of the specific categories authorized by section 3582(c) . . . .'").

COVID-19 are not irrelevant to a court's analysis of a motion under § 3582(c)(1)(A). If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." *See* Centers for Disease Control, *People with Certain Medical Conditions, available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Oct. 6, 2020) (hereinafter "CDC Medical Conditions").[7] Under these circumstances, a chronic condition (*i.e.*, one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. U.S.S.G. § 1B1.13, app. n.1(A)(ii)(I). But as part of its analysis of the totality of

[7] The CDC states that the following conditions "are at increased risk of severe illness from COVID-19": cancer; chronic kidney disease; COPD (chronic obstructive pulmonary disease); immunocompromised state (weakened immune system) from solid organ transplant; obesity (body mass index [BMI] of 30 but less than 40) and severe obesity (BMI 40 or higher); heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies; sickle cell disease; smoking; and type 2 diabetes mellitus. *See* CDC Medical Conditions. Further, the CDC lists the following conditions that "might be at an increased risk," but notes that "there are limited data and information about the impact of underlying medical conditions and whether they increase the risk for severe illness from COVID-19": asthma (moderate-to-severe); cerebrovascular disease (affects blood vessels and blood supply to the brain); cystic fibrosis; hypertension or high blood pressure; immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines; neurologic conditions, such as dementia; liver disease; overweight (BMI greater than 25 but less than 30); pregnancy; pulmonary fibrosis (having damaged or scarred lung tissues); thalassemia (a type of blood disorder); and type 1 diabetes. *See id.*

the circumstances, the Court should consider whether the inmate is more likely to contract COVID-19 if he or she is released than if he or she remains incarcerated. That will typically depend on the inmate's proposed release plans and whether a known outbreak has occurred at his or her institution.

In general, the Government agrees that, during the COVID-19 pandemic, those conditions included in the CDC's "are at increased risk" list present "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," § 1B1.13, app. n.1(A)(ii)(I), in that a defendant who suffers from one of those conditions has a substantially diminished ability to provide self-care against serious injury or death as a result of COVID-19 and sets forth an "extraordinary and compelling" reason for purposes of § 3582(c). The situation is slightly complicated for those conditions listed as "might be at an increased risk" because the CDC recognizes that there is currently limited data and information about the impact of these underlying medical conditions and whether they actually increase the risk for severe illness from COVID-19. *See* CDC Medical Conditions.

In this case, Powell alleges risk of serious illness from COVID-19 due to his state of being wheelchair bound. Medical records from the past year provided by BOP confirm his wheelchair-bound status. (Exh. A at 19, 27, 33, 42, 49, 50.) Being wheelchair bound is not a condition that either places one or might place one at risk of serious illness from COVID-19. *See* CDC Medical Conditions. However, according

to Powell's medical records, he does have muscular dystrophy.  Muscular dystrophy is, likewise, not a condition on CDC's lists for risk of serious illness from COVID-19.  However, Powell's medical records from BOP suggest, without explanation, that the combination of Powell's muscular dystrophy and hypertension "make him high risk." (Exh. A at 4.)  Still, to the extent that his muscular dystrophy is similar to a condition on one of CDC's lists, it appears to be most similar to amyotrophic lateral sclerosis (ALS), which is a neurologic condition.  *See* CDC Medical Conditions.  According to the CDC, neurologic conditions "might" place one at risk of serious illness from COVID-19.  *See* CDC Medical Conditions.  And although muscular dystrophy is not a neurologic condition, both it and ALS involve weakening of the muscles.  (Exh. A at 1); *See* Centers for Disease Control, *National Amyotrophic Lateral Sclerosis Registry*, *available at https://www.cdc.gov/als/ALSFAQ.html* (last reviewed Oct. 30, 2020). Therefore, the Government leaves it to the Court's determination whether Powell's muscular dystrophy qualifies as an "extraordinary and compelling reason" under § 1B1.13, application note 1.

### F. Regardless, this Court should exercise its discretion and decline to grant Powell's motion for compassionate release.

Assuming he otherwise exhausted his administrative remedies and has met his burden of demonstrating an extraordinary and compelling reason during the COVID-19 pandemic, the Court should still exercise its discretion and decline to grant his motion.  *See* § 3582(c)(1)(A) (explaining court "*may* reduce the term of imprisonment" (emphasis added)); *see also United States v. Webster*, No. 3:91CR138 (DJN), 2020 WL 618828, at *5 (E.D. Va. Feb. 10, 2020) ("Even if a defendant meets

the eligibility criteria for compassionate release, the Court retains discretion over whether to grant that relief."). Importantly, this Court must determine that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g) . . . " U.S.S.G. § 1B1.13(2). This determination includes considering the person's character, physical and mental condition; his past conduct; his criminal history; and whether, at the time of the offense, the person was on probation or parole. *See* 18 U.S.C. § 3142(g)(3). Moreover, the Court must consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). Should the Court conclude the defendant does not pose a danger to any person or the community, it must then continue to evaluate the factors under § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Willingham*, No. CR 113-010, 2019 WL 6733028, at *1 (S.D. Ga. Dec. 10, 2019).

Powell has the burden to show he qualifies for compassionate release. As part of its analysis, the Court may consider the particular circumstances Powell faces at his specific BOP facility. In that regard, Powell has not shown that the conditions of confinement at FCI Tallahassee are inclined to uniquely and adversely affect him to the point of justifying early release. Powell has not demonstrated that BOP's COVID-19 plan is inadequate or that FCI Tallahassee is specifically unable to adequately treat him. As of October 29, 2020, FCI Tallahassee has reported 69 inmates and 16 staff members have tested positive for COVID-19; 44 inmates and eight staff

members have recovered.[8]  Powell is not being treated differently from any other inmate, and he has not shown that BOP cannot adequately address any medical issues he faces during this period.  In fact, his medical records show that BOP is providing adequate care.  He was sent to the emergency department for his COVID-19 on October 7, 2020.  (Exh. A at 1.)  After he returned, notes from his evaluation there showed that "[h]is visit was unremarkable with normal vitals, normal labs and a normal physical exam aside from the expected muscular weakness associated with muscular dystrophy."  (Exh. A at 1.)  And though Powell tested positive for COVID-19 on October 7, 2020, he was placed in quarantine and advised to "follow-up at [s]ick [c]all as [n]eeded."  (Exh. A at 1-2, 4.)  As of October 21, 2020, he denied any COVID-19 symptoms including "headache, cough, shortness of breath, fatigue, body aches, loss of taste or smell, [or] nausea."  (Exh. C at 1-2.)  Notably, since October 22, 2020, Powell has refused BOP's efforts to continue screening him for COVID-19.  (Exh. C at 1.)  Consequently, Powell has not shown that BOP's plan is inadequate, nor established that BOP is unable to adequately treat him.

Further, considering § 1B1.13(2) and the § 3553(a) factors—including the nature of the offense, the history and characteristics of the defendant, and the need to protect the public and provide deterrence—this Court should deny Powell's motion. In the present case, from July 7 to August 7, 2017, Powell sold approximately 118.75 grams of methamphetamine to a confidential informant on at least six occasions. (PSR ¶¶ 6-12.)  Powell also has a conviction for vehicular homicide and, despite this

---

[8] *See* BOP COVID-19 resource page.

conviction which involved the death of a human being, continued to drive while under the influence.  (PSR ¶¶ 29-32.)

Moreover, Powell was just sentenced less than a year ago and has at least five years left on his sentence.  *See United States v. Newell*, No. CR53-009, 2020 U.S. Dist. LEXIS 137803, at *8 (S.D. Ga. Aug. 3, 2020) (denying the defendant's motion for compassionate release finding that reducing the defendant's sentence would not reflect the seriousness of the offense or provide just punishment); *United States v. Roper*, No. 117-035, 2020 WL 4288417, at *1 (S.D. Ga. July 27, 2020) ("If the Court were to release Defendant early, he would avoid serving well over half of the five-year term, which would fail to reflect the seriousness of the offense, promote respect for the law, provide just punishment, or afford adequate deterrence."); *United States v. Pawlowski*, 967 F.3d 327, 329-30 (3d Cir. 2020) (affirming district court denial of compassionate release under § 3553(a) where defendant had only served 19 months of his 180-month sentence); *United States v. Pemberton*, No. 16-275, 2020 WL 3452227, at *2 (M.D. Fla. June 24, 2020) ("[T]he Court agrees with the Government that granting Pemberton compassionate release, just three years into a 21-year sentence for a serious conviction for sex trafficking of a minor, would not serve the purposes of Section 3553(a) . . . .").  What is more, at the time of sentencing, the Court was aware that Powell "uses a wheelchair for mobility."  (PSR ¶ 44.)

And, finally and importantly, Powell has not demonstrated a viable, probation-approved release plan.  He fails to state and prove where he will receive medical treatment and how he will pay for it.  On the other hand, Powell *is* receiving medical

treatment from BOP. He has not shown that releasing him is a better option. *See, e.g.*, *United States v. McCloskey*, No. 4:18-cr-260, 2020 U.S. Dist. LEXIS 102005, at *17 (S.D. Ga. June 9, 2020) (denying compassionate release request without an "approved home release plan"); *United States v. Allison*, No. 16-5207, 2020 WL 3077150, at *4 (W.D. Wash. June 10, 2020) ("An appropriate release plan is essential to ensure that a defendant actually has a safe place to live and access to health care in these difficult times. Shortening a defendant's sentence where there is no adequate release plan offers no benefit to the health of the inmate and in the process likely further endanger the community into which the defendant is released.").

Therefore, based on the § 3553(a) factors, as well as U.S.S.G. § 1B1.13(2), this Court should exercise its discretion and deny Powell's motion for early release.

## Conclusion

For the foregoing reasons, the United States respectfully requests that Defendant's motion for compassionate release (Doc. 87) be dismissed and, alternatively, denied.

Respectfully submitted,

BOBBY L. CHRISTINE
UNITED STATES ATTORNEY

*//s// Channell V. Singh*
Channell V. Singh
Assistant United States Attorney
Georgia Bar No. 216540

P.O. Box 8970
Savannah, Georgia 31412
(912) 652-4422

## CERTIFICATE OF SERVICE

This is to certify that I have on this day served all the parties in this case in accordance with the notice of electronic filing ("NEF") that was generated as a result of electronic filing in this Court. Additionally, a copy has been mailed to:

John Willie Powell, Reg. No. 23026-021
FCI Tallahassee
Federal Correctional Institution
P.O. Box 5000
Tallahassee, FL 27509

This October 30, 2020.

Respectfully submitted,

BOBBY L. CHRISTINE
UNITED STATES ATTORNEY

*/s/ Channell V. Singh*
Channell V. Singh
Assistant United States Attorney
Georgia Bar No. 216540

Post Office Box 8970
Savannah, Georgia 31412
(912) 652-4422